UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH T. GENTLEMAN,                    )
                                        )
                    Plaintiff,          )    Case No. 16-cv-03096
                                        )
        v.                              )    Judge Sharon Johnson Coleman
                                        )
MASSACHUSETTS HIGHER                    )
EDUCATION ASSISTANCE                    )
CORPORATION d/b/a AMERICAN              )
STUDENT ASSISTANCE, a Massachusetts     )
not for profit corporation, DELTA       )
MANAGEMENT ASSOCIATES, INC., a          )
Massachusetts corporation, and GLOBAL   )
RECEIVABLES SOLUTIONS, INC. f/k/a       )
WEST ASSET MANAGEMENT, INC., a          )
Delaware Corporation,                   )
                                        )
                    Defendants.         )

**MEMORANDUM ORDER AND OPINION**

Plaintiff Joseph Gentleman filed an Amended Complaint alleging a number of statutory and

common-law claims against defendants Massachusetts Higher Education Assistance Corporation,

doing business as American Student Assistance ("ASA"); Delta Management Associates, Inc.

("Delta"); and Global Receivables Solutions, Inc., formerly known as West Asset Management, Inc.

("GRS"). The claims arise in connection with the defendants' attempts to collect payment on a

student loan that was consolidated in 2006. The Court granted in part and denied in part the

defendants' motions to dismiss. The remaining claims are Counts I, II, V, and VI against ASA and

Counts II to the extent it alleges violations of the FDCPA occurring after March 13, 2015 and

Counts I and VI against Delta and GRS. Gentleman moves for summary judgment on all remaining

claims, ASA's counterclaim, and Count IV[1] [147]. Delta moves for summary judgment on all remaining claims [140]. GRS likewise moves for summary judgment on all remaining claims[2] [143] and filed a motion to strike certain paragraphs of Gentleman's Rule 56.1 Statement [160]. For the reasons set forth herein, the Court grants in part and denies in part GRS's motion to strike. Gentleman's motion for summary judgment is denied, and Delta's and GRS's motions for summary judgment are granted.

**Rule 56.1 Statements and Evidence**

As an initial matter, the Court turns to the sufficiency of the parties' Rule 56.1 statements. GRS filed a motion to strike certain paragraphs of Gentleman's Rule 56.1 Statement, objecting that many of Gentleman's paragraphs violate Local Rule 56.1(a)(3) because they contain numerous factual allegations, they have no bearing on his claims against GRS, or they do not specify which defendant is the subject of the allegations. The Court also notes ASA's and Delta's objections to the facts and admonishes Gentleman for not streamlining his facts appropriately in his revised Rule 56.1 Statement. "[A] district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Moreover, Gentleman disregarded the Court's specific order to reduce the number of facts to 120 and reduced the total number of paragraph numbers by combining multiple statements into lengthy narrative paragraphs. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (Castillo, J.) ("[T]he numbered paragraphs should be

---

[1] The Court already has dismissed Count IV against ASA, Delta, and GRS. (Dkt. 93.) The Court admonishes Gentleman for reasserting arguments already rejected by the Court and notes that the arguments are particularly unwelcome in light of the thirty-page extension granted by the Court. Thus, the Court does not consider Gentleman's argument that he is entitled to summary judgment as to Count IV.

[2] The Court dismissed a number of claims at the motion to dismiss stage, including Count II insofar as it alleges violations of the FDCPA occurring before March 13, 2015, and Counts III and IV against GRS. As a result, the only remaining claims against GRS are Count II to the extent it alleges violations of the FDCPA occurring after March 13, 2015, and Counts I and VI. Contrary to Gentleman's assertion, GRS has moved for summary judgment on each of these claims, and thus properly moved for summary judgment in full. A partial motion for summary judgment is when a party moves for summary judgment on less than all of the claims before a court. Thus, the Court also finds that Gentleman has filed a motion for summary judgment, rather than a partial motion for summary judgment.

short; they should contain only one or two individual allegations[.]"). Thus, the Court exercises its discretion and strikes the following paragraphs of Gentleman's Rule 56.1 Statement that are not limited to short numbered paragraphs: 17, 19–21, 23, 32, 34–35, 58, 67, 72–73, 75, 78–79, 82, 84, 98–99, and 120.

ASA and Delta also object to a number of Gentleman's Rule 56.1 Statement paragraphs on the basis that they rely on inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, which is inadmissible absent an exception. Fed. R. Evid. 801(c), 802. None of the hearsay exceptions apply to these paragraphs, so the Court strikes paragraphs 7 and 62 of Gentleman's Rule 56.1 Statement. The Court also strikes the second portion of paragraph 18 related to information from a call Gentleman's wife allegedly made, the second sentence of paragraph 30 stating what ACS Education Services ("ACS") allegedly told Gentleman, and all of paragraph 62 after the statement regarding Gentleman's interest in purchasing real estate. Despite the long and sometimes unclear or confusing nature of Gentleman's other Rule 56.1 Statement paragraphs, these facts are not so disruptive to the Court's decision-making process to warrant that the Court not consider them. The Court grants in part and denies in part GRS's motion to strike and ASA and Delta's objections to Gentleman's Rule 56.1 Statement.

In his opposition to GRS's motion for summary judgment, Gentleman contends that the Court should strike the affidavit of Andrew Balthaser, GRS's Vice President of Compliance. Gentleman asserts that Balthaser's affidavit is self-serving, is not based upon his personal knowledge, fails to properly introduce business records, and includes improper testimony regarding the current status of the relationship between ASA and GRS. GRS responds that self-serving affidavits are permissible under certain circumstances, that Balthaser is familiar with GRS's business record practices, and that Balthaser reviewed the relevant records to the topics he testifies about in his affidavit. Gentleman also contends that the call records attached as Exhibit 1 were not produced

3

during discovery, so should be stricken. GRS responds that the call records are a summary of the calls placed to Gentleman, which are all listed on the 115 pages of servicing notes produced in discovery that Gentleman included as an exhibit. (Dkt. 146-3, Ex. 33 at 134–55.)

A party may offer an affidavit as evidence in support of a summary judgment motion so long as the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and shows that the affiant ... is competent to testify." Fed. R. Civ. P. 56(c)(4). The Seventh Circuit permits affidavits, deposition testimony, and other written statements that "by their nature are self-serving," as long as they are based on personal knowledge and otherwise satisfy Rule 56. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The Court understands Gentleman's objection to improper business records to be a hearsay objection. Rule 803(6) recognizes an exception for business records rendering them admissible so long as "the custodian or another qualified witness" can establish that the record was made by someone with knowledge and made and kept in the regular course of business. Fed. R. Evid. 803(6).

The Court is satisfied that Balthaser has sufficient personal knowledge to testify about GRS's telephone systems and related records of such calls and is a "qualified witness" for the purposes of Federal Rule of Evidence 803(6). *See Norman v. AllianceOne Receivables Mgmt., Inc.*, 637 F. App'x 214, 216 (7th Cir. 2015). To be classified as a business record, the witness need not have created the records about which he is testifying. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006). Balthaser's affidavit states that he is the Vice President of Compliance, that he is familiar with GRS's records through his job duties, and that he has knowledge of and access to GRS's business records and practices. Further, Balthaser presents specific testimony regarding GRS's relationship with ASA concerning Gentleman's account. Balthaser states that the account was recalled, which means that GRS no longer has any pecuniary interest in the account. Although Gentleman contends that this is not based on any documentation, Gentleman submitted ASA and GRS's Collection Services

4

Agreement to the Court. That agreement indicates that once an account is recalled that GRS has no outstanding rights to the account and any payments received by GRS after recall "shall be immediately endorsed and issued to ASA." (Dkt. 146-6, Ex. P § 2.2.)

Finally, the Court will not consider the summary call record document because the summary was not produced to the opposing party during discovery and Balthaser does not explain how the records were created. However, each of the calls in the summary records are reflected in the exhibit submitted to the Court by Gentleman, so Gentleman cannot contend that he was unaware of the information included therein. Therefore, the Court considers Balthaser's testimony regarding the call records listed in GRS's complete records concerning their handling of Gentleman's account. (Dkt. 146-3, Ex. 33 at 134–55.) Thus, the Court strikes Exhibit 1, but otherwise denies Gentleman's request to strike Balthaser's affidavit.

In his opposition to Delta's motion for summary judgment, Gentleman contends that the Court should also strike the affidavit of Patrick Young, Delta's Compliance Manager. Gentleman asserts many of the same arguments, indeed sometimes verbatim, that he made for excluding Balthaser's affidavit, including arguing that Young's affidavit is self-serving, is not based upon his personal knowledge, fails to properly introduce business records, and includes improper testimony regarding the current status of the relationship between ASA and Delta. Delta responds that self-serving affidavits are permissible under certain circumstances, that Young is familiar with Delta's business record practices, and that Young reviewed the relevant records to the topics he testifies about in his affidavit.

The Court also is satisfied that Young has sufficient personal knowledge to testify about Delta's telephone systems, collection efforts related to Gentleman, and related records and is a "qualified witness" for the purposes of Federal Rule of Evidence 803(6). *See Norman*, 637 F. App'x at 216. Young's affidavit states that he is the Compliance Manager, that he is familiar with Delta's

records through his job duties, and that he has knowledge of and access to Delta's business records and practices. Further, Young presents specific testimony regarding Delta's actions concerning Gentleman's account. Young states that Delta is no longer collecting on the loan at issue and does not have any financial interest in the loan. Although Gentleman again contends that this is not based on any documentation, Gentleman also submitted ASA and Delta's Collection Services Agreement to the Court. (Dkt. 146-6, Ex. O.) Delta's contract with ASA does not provide for Delta to receive any compensation for funds that ASA recovers from Gentleman through its own collection efforts. (*Id.*, Ex. O § 3.1.) The Court will also consider the business records attached to the affidavit because these documents were produced during discovery, and Young has properly laid the foundation for these business records. *See Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003) (Hart, J.), aff'd, 398 F.3d 620 (7th Cir. 2005) ("Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic.").

Next, many of Gentleman's Rule 56.1(b)(3)(B) Responses to Delta's Rule 56.1 Statement and GRS's Rule 56.1 Statement, respectively, do not comply with Local Rule 56.1(b) because Gentleman did not respond with "specific references" to the record that demonstrate a factual dispute. L.R. 56.1(b)(3)(B); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). And, where the cited material does not clearly explain how it creates a genuine dispute, the nonmoving party should provide an explanation. Gentleman does not do that, despite the clarity of the Local Rules. For many of the statements that Gentleman disputes, he has improperly relied on cursory remarks and citations to a range of paragraphs in his own Rule 56.1 Statement. The majority of the paragraphs that Gentleman cites from his 56.1 Statement do not cite specific supporting material that creates a genuine dispute.

The Court further finds that Gentleman's bare support for many of his Rule 56.1 Statements is insufficient. Gentleman often relies on his own affidavit, yet attempts to rebut facts that could not be within his personal knowledge. For purposes of an affidavit (or deposition testimony) personal knowledge may include inferences and opinions, but not speculations or hunches. *See Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 805 n.1 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(4)); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). Gentleman is not qualified to opine about the type of device used to call him when he has no support other than a hearsay statement from a representative who allegedly worked for an unknown collection agency.

This Court deems admitted those paragraphs that Gentleman does not expressly admit yet fails to dispute with citations to relevant and admissible evidence in the record. *See Dade v. Sherwin– Williams Co.*, 128 F.3d 1135, 1139 (7th Cir. 1997) (referring to L.R. 56.1's predecessor rule, the court affirmed the district court's taking as true uncontroverted facts alleged in the movant's statement and supported by references to the record). Thus, the following paragraphs of Delta's Rule 56.1 Statement are deemed admitted: 4, 6, 8, 11–13, 17–19, 21–22, and 34–35. The following paragraphs of GRS's Rule 56.1 Statement are also deemed admitted: 11, 13, 16, and 17–29. The Court further deems admitted those paragraphs where Gentleman's response to Delta's Rule 56.1 Statement contradicts his earlier sworn deposition testimony: 2, 5, 16, and 30. For the same reason, the Court deems admitted the following paragraphs of GRS's Rule 56.1 Statement: 32, 33, and 35–36. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 505 n.5 (7th Cir. 2004).

## Background

The parties dispute whether Gentleman obtained more than one consolidation loan, whether Gentleman obtained or signed the loan at issue, whether the loan is enforceable, and the content of some communications between Gentleman and the defendants. These facts are material for some

of the claims and are dispositive for several claims related to ASA. The following facts are not disputed, unless otherwise noted.

From 1996 through 1998, Gentleman obtained seven Federal Family Education Loan Program ("FFELP") student loans to cover his law school educational expenses. Gentleman consolidated all of his student loans with one lender in 1998. (Dkt. 152-1, Ex. 7.) On March 5, 2006, a direct consolidation loan was obtained in Gentleman's name, which was used to pay off the 1998 consolidation loan. (Dkt. 152-1, Ex. 8.) Then the next day, a 2006 FFELP consolidation loan was obtained in Gentleman's name and used to pay off the 2006 direct consolidation loan. (Dkt. 146-1, Ex. 8 at 60.) Gentleman's name, biographical information, and a signature of his name appeared on the document titled Federal Consolidation Loan Application and Promissory Note ("Promissory Note"). Above the signature, the Promissory Note stated "I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY." (*Id.*) The interest rate for the Promissory Note was 6.25 percent. (*Id.*, Ex. 8 at 55.) ACS serviced the Promissory Note. ASA, a student loan guarantor, was not involved with Gentleman's application for the Promissory Note, but guaranteed the note.

Gentleman made sporadic payments to the Promissory Note servicer from 2006 to 2010. On March 20, 2011, ACS sent a final notice to Gentleman informing him that he owed a balance of $82,884.03 on the Promissory Note and that his account would be declared in default if he did not pay the balance. Gentleman did not and defaulted on the Promissory Note in 2011. Shortly after the default, ASA paid their guarantee for the Promissory Note to ACS. Then ASA sent a letter to Gentleman on September 11, 2011, that demanded that $84,808.98 be paid immediately. ASA wrote another letter on September 21, 2011, that stated that Gentleman owed $85,069.22.

*Delta*

Delta is a collection agency. ASA and Delta entered into a Collection Services Agreement, and ASA assigned Gentleman's debt to Delta for collection in January 2012. (Dkt. 146-6, Ex. O.)

Delta sent a letter to Gentleman on January 9, 2012, indicating that ASA was the creditor and that Delta would assume the debt unless Gentleman notified Delta within 30 days that he disputed the validity of the debt. Gentleman wrote to Delta requesting documents regarding the assignment of the Promissory Note, so Delta sent a letter to Gentleman on January 30, 2012, that enclosed a copy of the Promissory Note. That version of the Promissory Note was missing several pages of standard written terms. The parties dispute whether Gentleman himself executed the Promissory Note. Gentleman testified that when he received the incomplete Promissory Note he discovered that someone had forged his signature on the document. The defendants assert that Gentleman executed the Promissory Note. Delta placed an entry in the servicing notes for the Promissory Note on January 30, 2012, indicating that Delta should only contact Gentleman in writing.

On November 24, 2014, a Delta representative placed a call to Gentleman's cell phone using a Mitel 5212 desktop telephone. The Mitel 5212 phone does not store a list of telephone numbers and cannot generate random sequential numbers. To initiate the call, the Delta representative picked up the phone and entered the digits of the telephone number on the phone's keypad. A Delta representative used the same process to place a series of calls to Gentleman's cell phone in January and February 2016.

Delta placed a cease and desist flag in its system of record on December 8, 2014, stating that Gentleman should not be contacted by phone or mail. From that point forward, Delta had no contact with Gentleman until January 2016 when Gentleman contacted Delta. On January 27, 2016, Gentleman testified that he called ASA to determine which entities to name as defendants in this litigation. Then, Gentleman called Delta for information on how to resolve the default on the Promissory Note. Delta advised Gentleman that he could pay the loan in full, submit a settlement offer, or rehabilitate the loan. During that call, Delta obtained Gentleman's consent to contact him regarding the loan and removed the cease and desist flag for the loan. Following the conversation,

Delta provided the paperwork to submit a settlement offer to Gentleman. Gentleman called Delta a second time the same day to confirm his receipt of the settlement paperwork.

Delta called Gentleman on February 1, 2016, to review the additional information they required to evaluate Gentleman's settlement offer. During that call, Gentleman asked for a variety of information about the terms of the Promissory Note, including the loan balance, interest rate, method of interest accrual, and basis for calculating any accrued penalties. Gentleman emailed additional questions related to the loan to a Delta manager, and Delta called Gentleman on February 2, 2016 to review his questions. Gentleman's response to the Delta representative was that he would call back, although he never did. Delta prepared a letter to Gentleman on March 11, 2016, that substantiated the loan balance, interest rate, and accrued penalties, which Gentleman did not receive until this litigation. At no time prior to the litigation did Gentleman ever inform Delta that someone had forged his signature on the Promissory Note or that someone else had taken out the loan without his knowledge or consent.

*GRS*

GRS is also a collection agency. ASA assigned Gentleman's debt to GRS for collection on December 20, 2013. ASA and GRS entered into a Collection Services Agreement, which states that when an account is recalled that GRS has no outstanding rights to the account and any payments received by GRS after recall "shall be immediately endorsed and issued to ASA." (Dkt. 146-6, Ex. P § 2.2.) ASA recalled the debt from GRS on October 30, 2014.

During the period at issue (December 20, 2013 to October 30, 2014), GRS utilized a calling system created by Ontario Systems that GRS integrated with its manual calling solution ("MCS"). GRS also maintained a backup to the MCS system ("ATL"). The MCS and ATL systems operated in the same way, with neither system storing consumer information or using software that enabled the computer to produce telephone numbers to be called using a random or sequential number

10

generator. GRS agents used their system to generate a list of accounts for collection. Then the agent would review the generated list of accounts to determine if each account warranted calling the consumer. The agent would manually place the call to the consumer by either dialing the consumer's phone number using a keypad on the agent's screen or using the computer mouse to point and click on a telephone number displayed on the screen. The call would proceed with the live agent and after the call, the consumer information would disappear from the agent's computer and dialing solution. The GRS collection platform keeps records of each call along with several metrics, including the date, account number, dialed phone number, and the system used.

While GRS was assigned Gentleman's debt, the GRS records indicate that the company placed 67 total calls to Gentleman between January 2014 and May 2014, using manual dialing methods. The records for Gentleman's account detail each individual call and describe 66 of the calls as MCS and one of the calls as ATL. These call methods correspond to the manual systems described.

Gentleman testified that he received calls from a collection agency representative, Felicia Wright, who told him that she called using an automated telephone dialing system. He did not know which company or agency Wright worked with. Gentleman also testified that he could not remember the names of any person he talked to from GRS. GRS's personnel records indicate that they did not employee anyone named Felicia Wright during the period at issue.

Once ASA recalled Gentleman's debt from GRS on October 30, 2014, GRS relinquished all rights to the account and any payments received by GRS must be issued immediately to ASA. After October 30, 2014, GRS did not send any letters to or call Gentleman. Gentleman testified that he had no verbal or written contract from GRS since the end of 2014.

11

**Legal Standard**

Summary judgment is proper when the pleadings, the discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). In determining whether or not a genuine issue of material fact exists, this Court must view the evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Discussion**

*Declaratory Judgement (Count I)*

1. ASA

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court in the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Gentleman contends that he is entitled to summary judgment on Count I of his complaint and ASA's counterclaim because he does not owe any monies to ASA or its assigns and never has. ASA responds that the Promissory Note was permitted under federal law, that they presented admissible evidence to establish the existence of the Promissory Note, and that they established chain of title regarding the Promissory Note.

The parties dispute whether Gentleman obtained more than one consolidation loan, whether Gentleman obtained or signed the Promissory Note at issue, whether the Promissory Note is enforceable, and the content of some communications between Gentleman and the defendants.

These substantial disputes regarding the material facts about the validity of the Promissory Note preclude summary judgment on Gentleman's claim for declaratory judgment and on ASA's counterclaim, and the Court denies Gentleman's motion on Count I and ASA's counterclaim.

2. Delta

Delta asserts that Gentleman does not have standing for declaratory judgment against them because absent an "actual controversy" between the parties, a court has no jurisdiction to issue such a declaration. Gentleman does not directly address this argument, responding that Delta "attempted to collect a debt from [Gentleman] for numerous years." (Dkt. 154 at 5 ¶ 10.) Gentleman further argues that the Court should reject Delta's motion because it is based on the same grounds as their motion to dismiss argument that the Court rejected. However, summary judgment considers whether factual evidence exists to support a claim, and thus applies a higher standard than at the motion to dismiss juncture. *Whiting*, 839 F.3d at 661. Gentleman's unfounded allegations of fraud against Delta are not well taken.

Unless a plaintiff faces a "real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical," declaratory judgment is inappropriate. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Here, Gentleman contends, without setting forth evidence, that Delta has a financial interest in Gentleman's loan because Delta has an agreement with ASA. However, Delta provided undisputed evidence that Delta will not receive any compensation from ASA if ASA recovers any of the debt through its own efforts. There is also no evidence of a future issue that is rooted in anything more than hypothetical concerns. As a result, there is no actual controversy between Gentleman and Delta that confers jurisdiction over this claim. Thus, summary judgment for Delta is granted, and Gentleman's cross-motion on this issue is denied.

3.  GRS

GRS asserts that Gentleman does not have standing for declaratory judgment because such prospective injunctive relief requires a real and immediate threat as opposed to a threat that is merely conjectural or hypothetical.  As in his response to Delta, Gentleman also does not directly address this argument, responding that GRS "attempted to collect a debt from [Gentleman] for numerous years."  (Dkt. 155 at 5 ¶ 8.)[3]  The Court also rejects Gentleman's unfounded allegations of fraud against GRS for the same reasons as his charges against Delta and cautions Gentleman against future assertions.  Gentleman again contends, without setting forth evidence, that GRS has a financial interest in Gentleman's loan because GRS has an agreement with ASA.  However, GRS also provided undisputed evidence that GRS no longer has any pecuniary interest in the account.  As a result, there is no actual controversy, as is required, between Gentleman and GRS that confers jurisdiction over this claim.

Gentleman further asserts that he filed a cross-motion for summary judgment against GRS on his declaratory judgment claim, which GRS has waived by not responding to Gentleman's argument.  Other than contending that he is entitled to summary judgment or a petition for declaratory judgment because "he has never owed any monies to ASA or its assigns," Gentleman does not advance any argument specific to GRS on this claim.  (Dkt. 147 at 13.)  To merit a response, a moving party must articulate a legal reason with support for why he is entitled to summary judgment against a specific party.  Even so, when a non-moving party fails to respond to an argument asserted, the Court does not automatically grant summary judgment, but still reviews the arguments and draws all reasonable inferences in the light most favorable to the non-moving

---

[3] Gentleman again argues that the Court should reject GRS's motion because it is based on the same grounds the Court already rejected at the motion to dismiss stage.  Because summary judgment review considers whether factual evidence exists to support a claim, the Court applies a higher standard than at a motion to dismiss.  *Whiting*, 839 F.3d at 661.

party. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Gentleman has not satisfied this standard, while GRS has shown that declaratory judgment is not proper. For the above reasons, the Court grants summary judgment for GRS and denies Gentleman's motion.

*FDCPA (Count II)*

1. ASA

Gentleman contends that ASA violated the FDCPA because Gentleman never owed any debt to ASA or its assigns. ASA responds that summary judgment is not warranted because there exists a genuine dispute as to whether Gentleman owed a debt to ASA, which is a material fact for this claim. Moreover, ASA asserts that Gentleman cannot recover against ASA because they are a creditor, not a debt collector. Without undisputed evidence regarding the debt, the Court cannot assess whether ASA is not a debt collector for the Promissory Note, as defined by the FDCPA. The Court denies Gentleman's motion for summary judgment on Count II against ASA.

2. Delta

The FDCPA "generally prohibits 'debt collectors' from engaging in abusive, deceptive, or unfair debt-collection practices." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). To impose liability under this statute, Gentleman must prove the loan constitutes a "debt" as defined by the FDCPA and Delta violated a substantive provision of the FDCPA. *Ali v. Portfolio Recovery Assocs., LLC*, No. 15-CV-06178, 2018 WL 4760284, at *4 (N.D. Ill. Sept. 30, 2018) (Coleman, J.). Moreover, because the FDCPA imposes a one-year statute of limitations, Gentleman must demonstrate that such a violation occurred during the one-year period before he commenced this action – March 13, 2016. 15 U.S.C. § 1692k(d). Gentleman contends that Delta violated Sections 1692c, 1692d, 1692e, and 1692f of the FDCPA by attempting to collect on an allegedly forged Promissory Note.

Section 1692e broadly prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prevail, Gentleman must prove that the statement at issue was false and would mislead a reasonable, unsophisticated consumer. *See Bandas v. United Recovery Serv., LLC*, No. 17 C 01323, 2018 WL 4286198, at *3 (N.D. Ill. Sept. 7, 2018) (Kendall, J.). Delta asserts that Gentleman made no meaningful attempt to meet his burden. Gentleman appears to contend that Delta falsely represented that Gentleman owed money during two phone conversations on January 27, 2016. The undisputed facts, however, do not support Gentleman's position.

On January 27, 2016, Gentleman called Delta seeking information regarding how to resolve the default on the loan. Delta advised Gentleman that he could pay the loan in full, submit a settlement offer, or rehabilitate the loan. Then Delta provided the paperwork to submit a settlement offer to Gentleman. Gentleman called Delta a second time the same day to confirm his receipt of the settlement paperwork. The evidence regarding these conversations does not support that Delta made false or misleading representations regarding the debt at issue. Nor does Gentleman include any specifics regarding the 14 calls listed in Delta's servicing notes. In addition, the undisputed evidence concerning these calls show a series of calls initiated by both parties regarding possible resolution of the debt. Without any evidence to support that Delta made a false or misleading representation to Gentleman, Delta cannot be held liable for a violation of Section 1692e. Moreover, even if the Court continued with its analysis, Gentleman does not address how an unsophisticated consumer would be misled by Delta's comments about resolving the default on the loan during the calls.

Gentleman contends that Delta violated Section 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Delta responds that their actions did not violation Section 1692f because Gentleman has

produced no evidence to substantiate his allegations regarding the loan; he fails to satisfy the unsophisticated consumer standard that requires that Delta's conduct be viewed as unfair or unconscionable; Gentleman attempted to bait Delta into violating the FDCPA; and Section 1692f does not apply where a debt collector attempts to collect a fee provided for in a contract.

Section 1692f "addresses the conduct of the debt collector, not the validity of the underlying debt." *Transamerica Fin. Servs., Inc. v. Sykes*, 171 F.3d 553, 556 (7th Cir. 1999). When Gentleman contacted Delta regarding the loan, Delta explained that he could pay the loan in full, submit a settlement offer, or rehabilitate the loan. Delta's actions during those calls indicate that Delta sought to collect a debt authorized by the loan, and none of the information in Delta's possession suggest that the debt accrued on the loan was improper. Without ruling on the dispute regarding whether the Promissory Note is fraudulent, the Court finds that Section 1692f does not establish grounds for relief against Delta. *Id.* at 555 ("While attempting to enforce a fraudulent agreement may violate other laws, 15 U.S.C. § 1692f does not reach this action."). The amount of interest charged on the loan does not alter the Court's analysis because Gentleman has not shown that Delta was not authorized to seek to collect the debt referred by ASA. Because Delta's final argument precludes any liability pursuant to Section 1692f, the Court need not address their other arguments.

Sections 1692c and 1692d regulate the nature of communications in connection with debt collection. *See* 15 U.S.C. §§ 1692c–1692d. Gentleman alleges that Delta violated these sections of the FDCPA by continuing to contact him by phone after he requested to receive all future communications in writing. Delta responds, however, that their first communication with Gentleman during the relevant time period occurred on January 27, 2016, when Gentleman called Delta; it is undisputed that during that call Gentleman authorized Delta to call his cell phone. Delta further contends that because Gentleman has not addressed Delta's arguments concerning his authorization, Gentleman has waived any arguments that would permit him to prevail on these

claims. The Court finds that Gentleman affirmatively consented to Delta placing calls to his cell phone, so the ensuing phone calls related to Gentleman's loan and possible resolution do not violate the FDCPA. Therefore, Gentleman has failed to provide evidence of a violation of either provision while Delta has demonstrated that their actions did not violate Sections 1692c or 1692d. Thus, the Court denies Gentleman's motion and grants Delta's motion on all of the FDCPA claims, Sections 1692c, 1692d, 1692e, and 1692f.

3. <u>GRS</u>

An action under the FDCPA is subject to a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). As the Court ruled on defendants' motions to dismiss, here that means the only actionable violations are those alleged to have occurred after March 13, 2015. Gentleman contends GRS called him numerous times in an effort to collect the debt assigned to Gentleman, but which he contends did not exist. Gentleman's only assertion that a violation of the FDCPA occurred after March 13, 2015 is that GRS called him twice a week from March through December 2015. However, GRS's call records and Gentleman's own deposition testimony contradict this assertion. The last call GRS placed to Gentleman occurred on May 2, 2014. (Dkt. 146-3, Ex. 33 at 155.) Likewise, Gentleman testified that he had no reason to dispute that GRS no longer managed the account as of October 2014 and that he does not recall receiving any calls from GRS after October 2014. (Dkt. 144-2 at 5–6.) Gentleman's affidavit statement that he received "at least two calls a week from May 1, 2014 through December of 2015" (Dkt. 146-1 ¶ 63) does not identify who placed these calls and provides no information to controvert the evidence regarding when GRS made calls to Gentleman. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 910–11 (7th Cir. 2018) (internal quotation marks and citation omitted) ("[W]here deposition testimony and an affidavit conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken … .").

For the same reasons, Gentleman's statements about Felicia Wright do not alter the Court's analysis. Gentleman testified that he received numerous calls from Wright in 2014 and 2015. He testified that Wright worked for one of the collection agencies, but he did not know which one. GRS has no record of a current or former employee with the name Felicia Wright. Gentleman could not identify any other individuals that he contends worked for GRS. On this evidence, Gentleman can neither obtain summary judgment nor survive it. The Court denies Gentleman's motion and grants GRS's motion on Count II.

*Illinois Interest Act Against ASA (Count V)*

Section 6 of the Illinois Interest Act prohibits the charging or receiving of unlawful interest on any loan. 815 ILCS 205/6. Gentleman contends that ASA violated the Interest Act because they collected interest from Gentleman that was unlawful. ASA responds that Gentleman has not proved that he has no legal obligation to ASA and because ASA has never received any payment from Gentleman, whether interest or principal. As addressed above, it is a disputed fact whether the Promissory Note is fraudulent. Gentleman has not satisfied his burden to show that ASA received any interest, and if they did, that the interest was unlawful. ASA also disputes that they received any payments on the Promissory Note from Gentleman. Further, ASA did not become the holder of the Promissory Note until 2011 when it paid ACS the guarantee for the Loan, and it is undisputed that Gentleman did not make any payments on the Promissory Note after 2010. Since there are multiple factual disputes regarding the Promissory Note between Gentleman and ASA, the Court denies Gentleman's motion on Count V.

*TCPA (Count VI)*

1. <u>ASA</u>

Gentleman asserts that Delta and GRS violated the TCPA and that ASA is vicariously liable for those violations. ASA responds that because Delta and GRS did not violate the TCPA, ASA

cannot be held vicariously liable for any TCPA violation. Further, ASA asserts that Gentleman failed to demonstrate the existence of a principal-agent relationship through which ASA controlled the manner and method of work carried out by its alleged agents, Delta and GRS.

Since the Court has determined Delta and GRS have not violated the TCPA, therefore, ASA cannot be held vicariously liable. Even so, Gentleman has failed to demonstrate that ASA engaged in a principal-agent relationship with either Delta or GRS. For a principal-agent relationship to exist, the principal must have the right to control the manner and method of work carried out by the agent, and the agent must be able to affect the legal relationship of the principal. *See Oliveira–Brooks v. Re/Max Intern., Inc.*, 372 Ill. App. 3d 127, 134, 865 N.E.2d 252 (1st Dist. 2007). A party seeking to hold an alleged principal liable must prove both the existence of an agency relationship and the scope of authority. *Id.* Here, Gentleman established that ASA assigned Gentleman's debt for collection first to GRS and then to Delta, through their respective Collection Services Agreement documents. However, Gentleman provides no evidence that demonstrates that ASA served as the agent for or maintained authority over either debt collector. *See Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *5 (N.D. Ill. Mar. 19, 2013) (Valdez, M.J.), aff'd, 816 F.3d 935 (7th Cir. 2016). As such, this Court would not find ASA vicariously liable even if the other defendants had violated the TCPA.

Gentleman also maintains that ASA is liable for TCPA violations committed by other parties under a conspiracy or aiding and abetting theory. Both theories fail. Where the underlying claim is dismissed, both conspiracy and aiding and abetting claims must also fail. *See Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 821–22 (N.D. Ill. 2006) (Moran, J.) (citing *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936, 803 N.E.2d 619 (1st Dist. 2004)) (viability of conspiracy claim rests on the viability of the underlying claims); *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (same in the context of

aiding and abetting claims.).  Thus, the Court denies Gentleman's motion for summary judgment on Count VI against ASA.

2. <u>Delta</u>

Delta contends that summary judgment in their favor is warranted because there is no evidence to establish that Delta used an automatic telephone dialing system ("ATDS") to call Gentleman.  In response, Gentleman states that he has already conceded that Delta is not liable for a direct violation of the Act.  Gentleman maintains that Delta also is liable for TCPA violations committed by other parties under a conspiracy or aiding and abetting theory.  Again, both theories fail for the same reasons stated above.  The Court, thus, denies Gentleman's motion and considers whether summary judgment is appropriate for Delta.

The TCPA prohibits calls to cellular phones using an ATDS.  47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Gentleman alleges that Delta used an ATDS to place numerous calls to his cell phone from 2014 to 2015, despite his demand that all further communications from Delta should be made in writing.  Gentleman provided the Court with no evidence to establish that Delta used an ATDS to call his cell phone during the relevant time period.  Indeed, Gentleman contends that "discovery revealed that [Delta] did not place any phone calls within 3 years of the filing of the instant case."  (Dkt. 154 at 4.)

On the other hand, Delta presents uncontroverted evidence that the calls Delta representatives made to Gentleman's cell phone were placed using a Mitel 5212 desktop telephone. That desktop phone does not store a list of telephone numbers and cannot generate random sequential numbers.  For each of the calls made to Gentleman, a Delta representative picked up the phone and entered the digits of the telephone number on the phone's keypad.  Where a dialing

system requires an agent to manually enter a phone number, the system requires human intervention. *See Norman*, 637 F. App'x at 216. The Court will not continue to address Gentleman's argument that Delta is in cahoots with the other parties for the reasons previously stated. Thus, the Court denies Gentleman's motion and grants Delta's motion on Count VI.

3. GRS

Gentleman contends that GRS called him twice a week from March through December 2015 and that a GRS employee admitted to using an ATDS to call him, relying on much of the same evidence that the Court rejected in considering the FDCPA claim. GRS responds that Gentleman relies on hearsay and that the uncontroverted evidence demonstrates that GRS manually dialed all calls made to Gentleman, and therefore the calls do not violate the TCPA.

First, Gentleman states in his affidavit that he received numerous calls from individuals that identified themselves as ASA or GRS representatives and that the individuals told him that they called using an ATDS. Gentleman also testified that he did not know which calls came from ASA, GRS, or another collection agency. The Court agrees that Gentleman's statements regarding what a collection agency representative told him about the nature of the calls are hearsay. Gentleman also does not present sufficient evidence to support that the device used actually was an ATDS.

An unverified statement from an unidentified GRS employee is insufficient to controvert the facts in evidence regarding GRS's calling system. During the period at issue, GRS utilized a calling system through which an agent placed a call only after reviewing information associated with a consumer's account, electing to place a call to that consumer, and then calling the consumer by either using a keypad on the agent's screen to manually enter the phone number or clicking on a telephone number on the agent's display. After the agent completed the call to the consumer, the consumer's information, including the telephone number, would disappear from the agent's computer or calling solution. Indeed, the GRS records for Gentleman's account list each individual

22

call and describe all of the calls as manual, which requires human intervention. Indeed, another district court that considered the same system found that the Ontario system used here was not an ATDS under the TCPA. *See Frisch v. AllianceOne Receivables Mgmt., Inc.*, No. 15-CV-926-PP, 2017 WL 25471, at *2, *5 (E.D. Wis. Jan. 3, 2017). This Court agrees. There is no evidence that GRS used an ATDS to call Gentleman, and summary judgment for GRS is proper.

Gentleman further contends that GRS is liable for TCPA violations committed by other parties under a conspiracy or aiding and abetting theory. Both theories again fail for the same reasons stated above. Thus, the Court denies Gentleman's motion and grants GRS's motion on Count VI.

**Conclusion**

Based on the foregoing, the Court grants in part and denies in part GRS's Motion to Strike [160]. The Court denies Gentleman's Motion for Summary Judgment [147] in its entirety. The Court grants GRS's Motion for Summary Judgment [143] and Delta's Motion for Summary Judgment [140]. Counts I, II, and VI are dismissed as to defendants GRS and Delta. The remaining claims are Counts I, II, V, and VI as to defendant ASA and ASA's counterclaim.

IT IS SO ORDERED.

Date: 8/12/2019

Entered:
SHARON JOHNSON COLEMAN
United States District Court Judge